## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONALD RAY ROBINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-6364** |
| **BRANDON PINION, ET AL.** | **SECTION "F" (3)** |

### ORDER AND REASONS

Plaintiff, Donald Ray Robinson, a state pretrial detainee, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983. He named as defendants Brandon Pinion, Randy Pinion, and the Tangipahoa Parish Jail. In this lawsuit, plaintiff claims that defendants failed to protect him from violence at the hands of other inmates on November 2, 2004. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

Brandon and Randy Pinion have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[2] Plaintiff opposed that motion.[3] Defendants have filed a reply brief in response to plaintiff's opposition.[4]

---

[1]   Rec. Doc. 9.

[2]   Rec. Doc. 13. Defendants alternatively asked for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). However, because an answer had already been filed and because they attached evidence in support of their motion, the 12(b)(6) motion was improper.

[3]   Rec. Doc. 16.

[4]   That reply brief has not yet been assigned a docket number by the Clerk of Court.

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In their motion for summary judgment, defendants first argue that plaintiff's claims were prescribed at the time he filed this lawsuit.  "[F]or a § 1983 action, the court looks to the forum state's personal-injury limitations period.  In Louisiana, that period is one year." Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998) (citation omitted); see also Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002); La. Civ. Code Ann. art. 3492.  Plaintiff's claims in the instant case are based on an attack which occurred on November 2, 2004, and so he normally would have had only one year from that date to file suit.  However, due to devastation and disruption caused by Hurricane

Katrina, the Chief Judge of this Court suspended all filing deadlines and delays, including prescriptive periods, from September 1, 2005, until November 25, 2005.[5]

The record reflects that plaintiff signed his complaint on October 28, 2005.[6] He then gave the complaint to his parents, who mailed it to the Court in an envelope bearing a postage meter date of October 31, 2005;[7] however, the complaint was not received by the Court for filing until November 9, 2005.  Nevertheless, even if that latest date is used as the date of filing, that date fell within the Chief Judge's grace period and the lawsuit was therefore timely filed.

Defendants next argue that plaintiff's underlying claims, i.e. that defendants failed to protect him from violence at the hands of other inmates, have no merit.  The law with respect to such claims is clear:

> To establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).[8]

---

[5]  See Orders of Chief Judge Helen G. Berrigan dated September 1, 2005, and November 3, 2005.

[6]  Rec. Doc. 1.

[7]  Rec. Doc. 13, Exhibit A, plaintiff's deposition, p. 43; Rec. Doc. 1.

[8]  This same standard applies regardless of whether the inmate is a pretrial detainee or a convicted prisoner.  Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) ("[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement.").

In support of their motion for summary judgment, defendants have submitted plaintiff's deposition regarding his claims.[9] Plaintiff testified that when he was arrested for attempted second degree murder, Detective Chris Adams told Warden Randy Pinion that plaintiff may have enemies in the jail. As a result, plaintiff was placed in holding cell E-12 for his protection, where he remained until October 2004, when he was moved to lockdown. When his period in lockdown ended, he was moved to "Y Dorm." Shortly after arriving in Y Dorm, plaintiff saw that Louis Perry and Russell Remble, relatives of his alleged victim, were also incarcerated in that dorm. After plaintiff had been in Y Dorm for only approximately five minutes, he was threatened by Perry and Remble. Plaintiff immediately contacted John Dorsa, the prison guard monitoring the dorm from the pod, by intercom. Dorsa then summoned plaintiff to the pod. At his deposition, plaintiff testified:

> A. [Dorsa] tells me to explain to him what's going on and so I told him that I'm getting threatened that I can't live in the dorm because I got enemies in there. He then calls up front and tells Major Pinion, Major Randy Pinion. Okay. He calls and tells Randy Pinion I'm having problems back there so –
>
> Q. Were you there when he made the call?
>
> A. Yes. I'm standing right there. So Major Pinion in turn told him to tell me that he got to go back to maximum security or I can go to U dorm. So I told him I don't want to go back to maximum security so I'll take my chances in U dorm.
>     So at that time John Dorsa told me to go back in Y Dorm and get my belongings and we will watch from upstairs.[10]

---

[9]   Rec. Doc. 13, Exhibit A.

[10]  Rec. Doc. 13, Exhibit A, p. 22.

Plaintiff stated that, because he had not yet unpacked since arriving at Y Dorm, "[t]he only thing I had to do is like go back and get [my stuff] and come back out of the dorm."[11]  He testified:

> A.   And as I'm coming down I noticed Russell Remble and Louis Perry and another guy at the bottom of the stairs.  The other guy, I don't know his name.  I noticed them at the bottom of the stairs.  So I'm coming down.  I got my hands full with my mattress and blanket and everything.  So, as soon as I reach the bottom of the stairs, I got attacked by Russell Remble and Louis Perry.[12]

Defendants argue that they are entitled to judgment as a matter of law because arrangements were made to move plaintiff as soon as he reported the threats against him.  They further note that although plaintiff was sent back into the dorm unaccompanied to gather his belongings, he was being monitored from the pod at that time and even plaintiff himself did not believe he was going to be attacked at that instant.[13]  However, plaintiff counters that he should never have been moved into the general population at all, in light of the fact that defendants had prior warning that he might be in danger.[14]

The Court acknowledges that it is questionable whether plaintiff can ultimately prove that defendants in fact acted with deliberate indifference.  However, plaintiff has alleged that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to plaintiff existed if he was placed in the general population, and the defendants have

---

[11]   Rec. Doc. 13, Exhibit A, p. 23.

[12]   Rec. Doc. 13, Exhibit A, p. 24.

[13]   See Rec. Doc. 13, Exhibit A, pp. 28-30.

[14]   Rec. Doc. 16.

provided no direct evidence, such as through their own affidavits or otherwise, establishing that is untrue. Although the issue is a close one, the Court finds that summary judgment is not appropriate. Plaintiff is entitled to his day in court, where all evidence on this issue can be presented and duly considered.

However, pursuant to its authority under 28 U.S.C. § 1915A(b)(1),[15] the Court finds that the claim against the "Tangipahoa Parish Jail," which plaintiff has named as a separate defendant, should be dismissed as frivolous and for failing to state a claim upon which relief may be granted. A detention facility is merely a building, not a "person" subject to suit under 42 U.S.C. § 1983. See, e.g., Cullen v. DuPage County, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Administration, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (E.D. Pa. 1976).

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by Brandon Pinion and Randy Pinion is **DENIED**.

---

[15]     Section 1915A(b)(1) mandates that this Court screen prisoner complaints and dismiss those claims which are frivolous, malicious, or fail to state a claim upon which relief may be granted. The United States Fifth Circuit Court of Appeals has held that the screening provisions of § 1915A apply even when, as in the instant case, the prisoner has paid the required filing fee. Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998).

**IT IS FURTHER ORDERED** that the claims against the Tangipahoa Parish Jail are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) as frivolous and for failing to state a claim on which relief may be granted.

New Orleans, Louisiana, this nineteenth day of September, 2006.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**